## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RANDALL GIBSON, individually and on behalf of all others similarly situated | § § § | Docket No. 5:18-cv-1286 |
| Plaintiff, | § § § | |
| v. | § § | JURY TRIAL DEMANDED |
| SPARTAN ENERGY SERVICES, LLC and SPARTAN FLOW CONTROL SERVICES, LLC | § § § | |
| Defendant. | § § | FLSA COLLECTIVE ACTION |

## ORIGINAL COMPLAINT

1.       Randall Gibson (Gibson or Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Spartan Energy Services, LLC and/or Spartan Flow Control Services, LLC (together, Spartan or Defendants) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.       During the relevant period, Spartan utilized the services of oilfield personnel like Gibson to work on its behalf.

3.       Many of the oilfield workers Spartan employed, including Gibson, were staffed to Spartan by third-party entities.

4.       Gibson, and the other oilfield personnel like him who worked for, or on behalf of Spartan, regularly worked more than 40 hours a week.

5.       But Gibson and the other oilfield workers like him were not paid overtime.

6.       Instead of paying overtime as required by the FLSA, Spartan improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7.       Gibson brings this collective action to recover the unpaid overtime wages and other

damages owed to him and other oilfield workers like him.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10.     Spartan conducts substantial business operations in this District and Division.

11.     Spartan maintains offices in Pleasanton, Texas, located in this District and Division.

12.     Gibson worked for Spartan within this District and Division.

13.     Similarly situated potential class members worked for Spartan in this District and Division.

## THE PARTIES

14.     During the relevant time period, Gibson worked for Spartan as a Flowback Operator.

15.     Throughout his employment, Spartan paid Gibson a day-rate with no overtime compensation and classified him as an independent contractor.

16.     Gibson's consent to be a party plaintiff is attached as Exhibit A.

17.     Gibson brings this action on behalf of himself and all other similarly situated oilfield personnel who worked for, or on behalf of Spartan, who were classified as independent contractors and paid a day-rate with no overtime compensation.

18.     Gibson and the oilfield workers like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

19.     The class of similarly situated employees sought to be certified is defined as follows:

> **All oilfield personnel that worked for Spartan while classified as independent contractors and paid a day-rate during the last three years.**

20.     **Spartan Energy Services, LLC,** is a Delaware limited liability corporation and may be served by serving its registered agent for service of process, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever it may be found.

21.     **Spartan Flow Control Services, LLC,** is a Delaware limited liability corporation and may be served by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Inco., 211 East 7th St., Suite 620, Austin, Texas 78701 or wherever it may be found.

## COVERAGE UNDER THE FLSA

22.     At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23.     At all times hereinafter mentioned, Defendants have been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24.     At all times hereinafter mentioned, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25.     Defendants have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

26.     Defendants' annual gross volume of sales made, or business done, has exceeded $1,000,000.00 in each of the past three years.

27.     At all relevant times hereinafter mentioned, Gibson and the other oilfield workers like him were engaged in commerce or in the production of goods for commerce.

28.     At all relevant times hereinafter mentioned, Defendants treated Gibson (and each of

the oilfield workers like him) as an employee and uniformly applied their day-rate pay practice to Gibson and the oilfield workers like him.

29.     The misclassification of Gibson and the other oilfield workers like him as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

30.     Spartan is an oil and gas service company providing flow control, well testing, and thru tubing services to the oil and gas industry.

31.     To provide services to many of its customers, Spartan retains workers (including, but not limited to, Flowback Operators) to perform services on its behalf.

32.     During the relevant period, Spartan contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, including Flowback Operators like Gibson.

33.     Spartan and the third-party entities who staffed oilfield personnel to Spartan to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

34.     Spartan and the third-party entities who staffed oilfield personnel to Spartan to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

35.     Spartan is a joint employer of the oilfield personnel staffed to it by the third-party entities.

36.     Many of the oilfield personnel staffed to Spartan, including Gibson, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class.

37.     Even if their job titles and precise job duties differed, Spartan subjected Gibson and the other oilfield workers like him to the same or similar illegal pay practices for similar work.

38.     Specifically, Spartan classified all similarly situated oilfield workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they

worked that day (or in that workweek).

39.     Spartan uniformly failed to pay overtime for the overtime hours Gibson and the other oilfield workers like him worked.

40.     For example, during the relevant period Gibson worked for Spartan as a Flowback Operator.

41.     Throughout his employment, Spartan classified Gibson as an independent contractor and paid him on a day-rate basis.

42.     Spartan directed Gibson to work 12 (or more) hours a day for as many as seven days in a week.

43.     Gibson worked well in excess of 40 hours each week while employed by Spartan, often for weeks at time.

44.     The work Gibson performed was an essential part of Spartan's core business.

45.     During Gibson's employment with Spartan and while he was classified as an independent contractor, Spartan exercised control over all aspects of his job.

46.     Spartan did not require any substantial investment by Gibson for him to perform the work required of him.

47.     Spartan controlled Gibson's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

48.     Gibson was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

49.     While working for Spartan, Spartan controlled all the significant or meaningful aspects of the job duties performed by Gibson.

50.     Spartan exercised control over the hours and locations Gibson worked, tools and equipment used, and rates of pay received.

51.     Even though Gibson often worked away from Spartan's offices without the presence of a direct supervisor employed by Spartan, Spartan still controlled significant aspects of Gibson's job activities by enforcing mandatory compliance with its policies and procedures.

52.     No real investment was required of Gibson to perform his job.

53.     More often than not, Gibson utilized equipment provided by Spartan to perform his job duties.

54.     Gibson did not provide the significant equipment he worked with on a daily basis. Spartan or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Gibson worked.

55.     Gibson did not incur operating expenses like rent, payroll, marketing, and insurance.

56.     Gibson was economically dependent on Spartan during his employment with Spartan.

57.     Spartan set Gibson's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Spartan.

58.     Spartan directly determined Gibson's opportunity for profit and loss.

59.     Gibson's earning opportunity was based on the number of days Spartan scheduled him to work.

60.     Very little skill, training, or initiative was required of Gibson to perform his job duties.

61.     Indeed, the daily and weekly activities of the oilfield workers were routine and largely governed by standardized plans, procedures, and checklists created by Spartan.

62.     Virtually every job function was pre-determined by Spartan, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

63.     The oilfield workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Spartan's policies, procedures, and directives.

64.     Gibson performed routine job duties that were largely dictated by Spartan.

65.     Gibson was not employed by Spartan on a project-by-project basis.

66.     In fact, while Gibson was classified as an independent contractor, he was regularly on call for Spartan and was expected to drop everything and work whenever needed.

67.     All of the oilfield workers working for, or on behalf of Spartan, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

68.     All of the oilfield workers working for, or on behalf of Spartan, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

69.     All of the oilfield workers working for, or on behalf of Spartan, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

70.     Instead of paying them overtime, Spartan paid Gibson and the other oilfield workers like him a day-rate and misclassified them as independent contractors.

71.     Spartan denied Gibson and the other oilfield workers like him overtime for hours worked in excess of 40 hours in a single workweek.

72.     Gibson and the other oilfield workers like him were never paid on a salary basis. They never received any guaranteed weekly compensation from Spartan irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

73.     Spartan's policy of classifying Gibson and the other oilfield workers like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

74.     It is undisputed that the oilfield workers are working long hours in the oilfield.

75.     Because Gibson and the other oilfield workers like him were misclassified as independent contractors by Spartan, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

76.     Spartan's day-rate system violates the FLSA because Gibson and the other oilfield workers like him did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

77.     As set forth herein, Spartan has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

78.     Spartan knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Gibson and the other oilfield workers like him overtime compensation.

79.     Spartan's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

80.     Accordingly, Gibson and the other oilfield workers like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

81.     The illegal pay practices Spartan imposed on Gibson were likewise imposed on the other oilfield workers working for, or on behalf of, Spartan through third-party entities.

82.     Numerous individuals were victimized by Spartan's pattern, practice, and policy which is in willful violation of the FLSA.

83.     Numerous other individuals who worked with Gibson for Spartan, including those who worked through third-party entities, indicated they too were improperly classified as independent

contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

84.     Based on his experiences and tenure with Spartan, Gibson is aware that such illegal practices were imposed on the members of the Putative Class.

85.     Gibson and the other oilfield workers like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

86.     Spartan's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the oilfield workers like Gibson.

87.     Gibson's experiences are therefore typical of the other oilfield workers who worked for, or on behalf of, Spartan.

88.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

89.     Gibson has no interests contrary to, or in conflict with, the members of the Putative Class. Like each member of the Putative Class, Gibson has an interest in obtaining the unpaid overtime wages owed under federal law.

90.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91.     Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Spartan will reap the unjust benefits of violating the FLSA.

92.     Furthermore, even if some of the members of the Putative Class could afford individual litigation against Spartan, it would be unduly burdensome to the judicial system.

93.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

94.     Gibson's claims are similar to the claims of the other oilfield workers who worked for, or on behalf of, Spartan who were classified as independent contractors and paid a day-rate with no overtime compensation. Gibson and the other oilfield workers like him sustained damages arising out of Spartan's illegal and uniform employment policy.

95.     Gibson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

96.     Even if the number of hours worked by the oilfield workers like Gibson varies, the proof and method for calculating damages is common.

97.     Further, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

98.     Gibson demands a trial by jury.

## RELIEF SOUGHT

99.     WHEREFORE, Gibson prays for judgment against Spartan as follows:

a.   An order allowing this action to proceed as a collective action under the FLSA and directing notice to all oilfield personnel who Spartan while classified as independent contractors and paid a day-rate during the last three years;

b.   For an Order pursuant to Section 16(b) of the FLSA finding Spartan liable for unpaid back wages due to Gibson and the oilfield workers like him for liquidated damages equal in amount to their unpaid compensation;

c.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson
    **Michael A. Josephson**
    Texas State Bar No. 24014780
    **Andrew Dunlap**
    **Texas State Bar No. 24078444**
    **Lindsay R. Itkin**
    Texas State Bar No. 24068647
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    litkin@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas State Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**

11